Nicholson, C. J.,
delivered • the opinion of the court.
Claiborne Wolfe, the former husband of complainant, Hannah Dalton,' owned, at his death, two horses, "the title to which, under sec. 2288 of the Code, was vested in her in trust for herself and children. No one administered on his estate for several months after his death. In the meantime his widow had the possession and control of his personal property. She sold the two horses, for one of which she received a note for $200, and for the other a note for $100, both payable to herself. After the sale of the two horses George F. Wolfe was appointed administrator of her deceased husband, and as such received from her, together with the personal property and papers of the estate, the two notes for which she had sold the horses. He held the office of administrator for some time, and *500 then resigned, when one Bray was appointed. Before resigning he collected the $200 note, using all of the proceeds except $5 in paying a debt of the estate, and paying the $5 to the widow. He handed over the $100 note to his successor, Bray, who collected it, and which was paid over to her upon a bill filed by her, and decree for that purpose.- This bill was filed to make George F. Wolfe responsible for the $200 note. The Chancellor decreed in her favor, and defendant appealed.
There is no controversy as to the facts already stated, and upon 'these the right of complainant to recover is clear. But defendant insists in his answer that when he took possession of the personal assets "the widow banded him the notes mentioned in the bill and told him to take them and pay the debts.” He says further,, that "he took this note when presented as part of the estate, and knew no better, and at the special instance and request of the widow.” In his deposition he goes further, and says she told him when she handed him the notes that “she wanted all the debts paid, and if there was not enough to pay them all, she intended to pay them herself — that she wanted the land saved.”
It is obvious that all these statements are made in avoidance of the liability which he incurred by admitting that he had received and collected the note. It devolved upon him, therefore, to establish the matters in avoidance by proof. We'have already stated the evidence of defendant, in which he reiterates the statements in his answer.
*501 The. deposition of the widow was taken, and she says defendant “ came and called for all the papers, and not knowing any better, I gave all the papers that there was to him. He said he would take them and look over them, and if there was any he was not entitled to he would return them. No one was present at the time I gave him the papers except he and I. He never returned the note or any other papers. I did not know any thing about the law, and I let him take whatever he said when he came and administered on the estate. I did not know at the time that it was my property; I did not intend to surrender any of my rights as widow, for I needed the money very bad.”
We deem it unnecessary to analyze the testimony upon which it is attempted to fortify and sustain the evidence of defendant, and to impeach and overturn that of the widow. It is sufficient to state that the record discloses such a state of feeling and prejudice on the part of defendant and his witnesses, growing out of a family feud, that we can not but receive their testimony with many grains of allowance. We look upon the labored effort of defendant to discredit the widow as indicative of a spirit of persecution that is highly discreditable, while it fails to cast any just imputation upon her character, which, down to this suit is admitted by all the witnesses to have been above all reproach.
Upon a survey of all the evidence we are satisfied that the widow was an illiterate woman, wholly ignorant of her rights under the law, and that when *502 she handed over the notes to defendant she believed that they were assets of the estate, subject to be appropriated in the payment of its debts. Whatever she may have said as to their appropriation in payment of the debts, and her anxiety as to saving the-land, she might very well have said under the mistaken impression that the notes were properly assets, and in ignorance of .her own rights under the law as widow. She states positively in her testimony that she was not informed as to her right to the notes,, and that it was not her intention to surrender any of her rights. It 'is to be observed that the two notes were made payable to her. This fact was sufficient to have excited an inquiry into their ownership on the part of the defendant. It was his duty to-make this inquiry, and to communicate to her what her rights wei’e, and to receive as assets nothing which the law vested in her as widow. Seeing that these notes were payable to her he ought to have known and to have notified her that she held them as trustee for herself and her children, and that she had no-right to make any disposition of them that would defeat the trust. Having failed to make any inquiry into the ownership of the notes, or to- give her any-information as to her rights, he will be held responsible for a misapplication of the proceeds of the note, and he will be forced to resort to the estate for reimbursement, if he can show that he used the funds for the benefit of the estate.
The decree of the Chancellor is affirmed, with costs.